UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------ X
JULIO REYES, on behalf of himself and all others
similarly situated,

                           Plaintiff,

        -against-

SONG OF THE SON, INC. d/b/a THE MEAT
BROS KOREAN BBQ, JEONG YOOK CORP. d/b/a
JEONG YOOK KOREAN BBQ, and
JAE YONG SON,

                           Defendants
------------------------------------------------------------------ X

**COMPLAINT**

**FLSA COLLECTIVE ACTION**

**JURY TRIAL DEMANDED**

Plaintiff Julio Reyes ("Plaintiff" or "Reyes"), on behalf of himself and all others similarly situated, by his attorneys Pechman Law Group PLLC, complaining of Defendants Song of the Son Inc. d/b/a The Meat Bros Korean BBQ, Jeong Yook Corp. d/b/a Jeong Yook Korean BBQ, and Jae Yong Son (collectively, "Defendants"), alleges:

**NATURE OF THE ACTION**

1. Throughout his employment as a meat cutter and preparer at The Meat Bros Korean BBQ ("The Meat Bros") and Jeong Yook Korean BBQ ("Jeong Yook" and together with The Meat Bros, the "Restaurants"), Reyes regularly worked sixty-six hours per workweek, but Defendants unlawfully paid him on a weekly salary basis that failed to compensate him for overtime hours worked at a rate of one and one-half (1.5) times his regular hourly wage rate.

2. Reyes brings this action on behalf of himself and all similarly situated non-managerial kitchen workers to recover unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11 – 56a *et seq.* ("NJWHL").

## JURISDICTION

3. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the District of New Jersey under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

**Plaintiff Julio Reyes**

5. Reyes resides in Hudson County, New Jersey.

6. Defendants employed Reyes as a meat cutter and preparer at the Restaurants from approximately November 2015 until on or about November 3, 2019.

**Defendant Song of the Son, Inc. d/b/a The Meat Bros Korean BBQ**

7. Song of the Son, Inc. is a New Jersey corporation that owns, operates, and does business as The Meat Bros Korean BBQ ("The Meat Bros"), located at 176 Main Street, Building A, Fort Lee, New Jersey 07024.

8. Reyes worked as a meat cutter and preparer at The Meat Bros from approximately November 2018 until November 3, 2019.

9. Throughout Reyes' employment, The Meat Bros had employees, including Reyes, engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

10. In the three years preceding the filing of this Complaint, the Meat Bros has had an annual gross volume of sales in excess of $500,000.

**Defendant Jeong Yook Corp. d/b/a Jeong Yook Korean BBQ**

11. Defendant Jeong Yook Corp. is a New Jersey corporation that owns, operates, and does business as Jeong Yook Korean BBQ ("Jeong Yook"), located at 329 Bergen Boulevard, Palisades Park, New Jersey 07650.

12. Reyes worked as a meat cutter and preparer at Jeong Yook from approximately November 2015 through October 2018.

13. At the time of his hire in November 2015, Jeong Yook operated under the name Kang Ho Dong Baekjeong Korean BBQ ("Kang Ho Dong"), which was owned and operated by Kang Ho Dong Baekjeong Corp, a New Jersey corporation, now dissolved.

14. Jeong Yook is a successor-in-interest to Kang Ho Dong.

15. Individual defendant Jae Yong Son is an owner of both Jeong Yook and Kang Ho Dong.

16. Son is listed as the president and incorporator of Kang Ho Dong on business entity filings maintained by the New Jersey Department of the Treasury's Division of Revenue and Enterprise Services.

17. Son is listed as the registered agent and incorporator of Jeong Yook on business entity filings maintained by the New Jersey Department of the Treasury's Division of Revenue and Enterprise Services.

18. Kang Ho Dong was incorporated on July 15, 2014, with a main business address at 329 Bergen Boulevard, Palisades Park, New Jersey 07650, and was dissolved on February 27, 2019.

19. Jeong Yook was incorporated on January 4, 2019, with the same main business address as Kang Ho Dong.

20. In all material respects with the exception of the change in the premises name, Jeong Yook continued to operate the same Korean barbeque restaurant at the same location as Kang Ho Dong following Kang Ho Dong's dissolution.

21. Jeong Yook continued to engage in substantially the same work and provided the same service to its customers as Kang Ho Dong (i.e., Korean barbeque restaurant).

22. Jeong Yook continued to employee the same managers and employees in the same positions and with the same duties and pay provisions as Kang Ho Dong.

23. Throughout Reyes' employment, Jeong Yook and Kang Ho Dong had employees, including Reyes, engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

24. In the three years preceding the filing of this Complaint, Jeong Yook and Kang Ho Dong had an annual gross volume of sales in excess of $500,000.

**Defendant Jae Yong Son**

25. Defendant Jae Yong Son is an owner and principal of the Restaurants.

26. Son is listed as the president of Song of the Son, Inc. on business entity filings maintained by the New Jersey Department of the Treasury's Division of Revenue and Enterprise Services.

27. Son is listed as the owner of Song of the Son, Inc. on New Jersey Division of Alcoholic Beverage Control filings.

28. Son is listed as the registered agent and incorporator of Jeong Yook on business entity filings maintained by the New Jersey Department of the Treasury's Division of Revenue and Enterprise Services.

29. At all relevant times, Son held and exercised power and authority over personnel decisions at the Restaurants, including the authority to hire and fire employees, set employee wage rates, and maintain employee pay records. Son exercised this power and authority personally and through managers at the Restaurants.

30. Son was present at the Restaurants multiple times per week.

31. Son signed employees' checks, including Plaintiff's.

32. When there was a shortage of workers at the Restaurants, Son instructed employees to ask if their friends wanted to work at the Restaurants.

33. Son approved Reyes' transfer from his position as a meat cutter and preparer at Jeong Yook to work as a meat cutter and preparer at The Meat Bros in November 2018.

34. Son exercised sufficient control over the Restaurants' operations and Plaintiff's employment to be considered Plaintiff's employer under the FLSA and the NJWHL.

## FACTUAL ALLEGATIONS

35. Defendants hired Reyes to work as a meat cutter and preparer at Jeong Yook (then operating as Kang Ho Dong) in November 2015.

36. From November 2015 through October 2018, Reyes regularly worked twelve-hour shifts, from approximately 10:00 a.m. to 10:00 p.m., six days per week (Thursday through Tuesday), with a one-hour lunch break, totaling about sixty-six hours per workweek.

37. In November 2018, Defendants transferred Reyes from Jeong Yook to The Meat Bros.

38. From November 2018 through the end of his employment on November 3, 2019, Reyes regularly worked twelve-hour shifts at The Meat Bros, from approximately

5

10:00 a.m. to 10:00 p.m., six days per week (Thursday through Tuesday), with a one-hour lunch break, totaling about sixty-six hours per workweek.

39. From November 2015 through approximately May 2017, Defendants paid Reyes $680.00 per week.

40. From approximately June 2017 through April 2018, Defendants paid Reyes $700.00 per week.

41. From approximately May 2018 through the end of his employment, Defendants paid Reyes $750.00 per week.

42. Defendants paid Reyes' weekly salary by check.

43. On March 31, 2021, Plaintiff and Defendants, by their counsel, executed a tolling agreement, tolling Plaintiff's FLSA claims against Defendants as of March 23, 2021. A copy of the tolling agreement is attached to this Complaint as Exhibit A.

## COLLECTIVE ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of himself and all similarly situated non-managerial kitchen workers who worked at the Restaurants within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

45. The FLSA Collective consists of approximately fifteen similarly situated non-managerial kitchen workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

46. Throughout Plaintiff's employment, Plaintiff and the FLSA Collective have had work schedules consisting of over forty hours per workweek, have performed similar duties, and have been subjected to Defendants' common pay policies depriving them of

overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

47. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and/or policies violating the FLSA and the NYLL. These patterns, practices, and/or policies include, *inter alia*:

   a. failing to pay the FLSA Collective overtime wages for hours worked over forty per workweek; and

   b. failing to keep full and accurate records of all hours worked by the FLSA Collective, as required by the FLSA.

48. Defendants are aware or should have been aware that the FLSA required them to pay non-managerial kitchen workers overtime wages for hours worked in excess of forty per workweek.

49. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to the FLSA Collective.

50. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated non-managerial kitchen workers can be readily identified and located through Defendants' records. The similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

### FIRST CLAIM
### (FLSA – Unpaid Overtime Wages)

51. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

52. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and employed Plaintiff and the FLSA Collective.

53. Defendants were required to pay Plaintiff and the FLSA Collective overtime wages at a rate of one and one-half (1½) times their regular rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

54. Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

55. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

56. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

57. As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (NJWHL – Unpaid Overtime Wages)

58. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

59. Under the NJWHL, Defendants were required to pay Plaintiff overtime wages at a rate of one and one-half (1½) times his regular rate of pay for all hours worked in excess of forty per workweek.

60. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NJWHL.

61. Defendant failed to pay Plaintiff the overtime wages to which he was entitled under the NJWHL.

62. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the NJWHL with respect to the compensation.

63. Defendants willfully violated the NJWHL by knowingly and intentionally failing to pay Plaintiff overtime wages.

64. As a result of Defendants' willful violations of the NJWHL, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective, respectfully requests that this Court:

    a.    designate this action as a collective action on behalf of the FLSA Collective;

    b.    designate Plaintiff as the representative of the FLSA Collective;

    c.    authorize the issuance of a notice at the earliest possible time to all non-managerial kitchen workers employed by Defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

    d.    declare that Defendants violated the overtime wage provisions of the FLSA and the NJWHL;

    e.    declare that Defendant's violations of the FLSA and NJWHL were willful;

    f.  enjoin and permanently restrain Defendants from further violations of the FLSA and NJWHL;

    g.  award Plaintiff and the FLSA Collective damages for unpaid overtime wages;

    h.  award Plaintiff and the FLSA Collective liquidated damages;

    i.  award Plaintiff and the FLSA Collective pre- and post-judgment interest;

    j.  award Plaintiff and the FLSA Collective reasonable attorneys' fees and costs of the action; and

    k.  award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
    September 17, 2021

                 PECHMAN LAW GROUP PLLC

                 By: */s/ Louis Pechman*
                    Louis Pechman
                    Galen C. Baynes
                    Pechman Law Group PLLC
                    488 Madison Avenue, 17th Floor
                    New York, New York 10022
                    Tel.: (212) 583-9500
                    pechman@pechmanlaw.com
                    baynes@pechmanlaw.com

                    *Attorneys for Plaintiff and the*
                    *Putative FLSA Collective*

# EXHIBIT A

## TOLLING AGREEMENT

This Agreement is made by and between Jeong Yook Corp. d/b/a Jeong Yook, Jeong Yook Inc. d/b/a Jeong Yook, Song of the Son Inc. d/b/a The Meat Bros, and Jae Yong Son (collectively, the "Employer"), on one side, and Julio Reyes, Gervacio Evaristo, and Ricardo Mendez (collectively, the "Plaintiffs"), on the other. Collectively, the Employer and Plaintiffs are referred to as the "Parties."

**WHEREAS** Plaintiffs are former employees of Jeong Yook Corp., Jeong Yook Inc., and/or Song of the Son Inc., and have indicated their intent to file an action (the "Action") bringing claims on behalf of themselves and other similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C.§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL");

**WHEREAS** counsel for Plaintiffs and the Employer agree that it is in their clients' mutual interest to explore the possibility of settlement discussions and resolution in settlement outside of litigation, without commencement of litigation of the proposed Action;

**NOW THEREFORE**, for good and sufficient consideration which is set forth herein, the receipt of which is hereby acknowledged, Plaintiffs and the Employer agree as follows:

1.  Tolling Provision. No statute of limitations on any wage-and-hour claims, including but not limited to claims for unpaid minimum, overtime, and spread-of-hours wages under the FLSA and NYLL and wage statement/wage notice claims under NYLL shall run against Plaintiffs, and the same are and will be tolled, for the period of time while the Agreement is in effect. The Employer, including their representatives, executives, owners, managers, and/or agents, shall not put forward or rely upon the period of time while the Agreement is in effect as a bar, statutory limit, or laches or for any other purpose to defeat any such claims of Plaintiffs. Nothing contained in the Agreement can be construed as or considered an admission by the Employer with respect to any allegations or claims by Plaintiffs.

2.  Duration. This Agreement is effective as of March 23, 2021 and shall terminate after either Plaintiffs or the Employer give written notice of cancellation of the Tolling Agreement to the other Party. Moreover, the Agreement will terminate immediately after the filing of a lawsuit by Plaintiffs asserting any claim under the NYLL and/or FLSA against the Employer.

3.  Use of Agreement. During the term of this Agreement, Plaintiffs shall refrain and forebear from commencing, instituting, or prosecuting any lawsuit, arbitration, action, or other proceeding against the Employer raising FLSA or NYLL claims.

4.  Modification. This Agreement can be modified only in a writing signed by the Parties. This Agreement shall constitute the entire understanding between the Parties concerning the subject matter of this Agreement and supersedes and replaces all prior negotiations, proposed agreements, and agreements, written or oral, relating to this subject.

5. Successors. This Agreement shall bind and benefit all of the Parties and their respective predecessors, successors, and assigns.

6. Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York.

7. Execution in Counterparts. Separate counterparts of this Agreement may be executed by the Parties with the same force and effect as if all such parties had executed a single copy of this Agreement. Electronic or PDF signatures, including signatures using a program such as DocuSign, are acceptable as physical signatures.

8. Authority to Bind. Each Counsel executing this Agreement represents and warrants that he or she has been authorized to enter into this Agreement on behalf of the Party on whose behalf it is signed and that signatory has full and complete authority to do so.

9. Notices. Any notice, request, instructions or other document to be provided hereunder by either party to the other shall be in writing and delivered personally or mailed by certified mail, postage prepaid, return receipt requested (such personally delivered or mailed notice to be effective on the date actually received) or by electronic mail as follows:

If to Plaintiffs, address to:

Galen C. Baynes, Esq.
Pechman Law Group PLLC
488 Madison Avenue
New York, New York 10022
baynes@pechmanlaw.com

If to the Employer, address to:

Benjamin B. Xue, Esq.
Xue & Associates, P.C.
1 School Street, Suite 303A
Glen Cove, New York 11542
benjaminxue@xuelaw.com

Dated: 3/31/2021          Plaintiffs
                          By: _____
                              Galen C. Baynes, Esq.

Dated: _____        The Employer
                          By: _____
                              Benjamin B. Xue, Esq.

2